FILED
JUN 27 2017
Clerk, U.S Courts
District Of Montana
Missoula Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| AVIATION ALLIANCE INSURANCE RISK RETENTION GROUP, INC., <br><br> Plaintiff, <br><br> vs. <br><br> POLARIS ENTERPRISE GROUP, INC., CAMERON CREBS, and RICK CREBS, <br><br> Defendants. | CV 17–35–M–DWM <br><br> ORDER |

Plaintiff Aviation Alliance Insurance Retention Group, Inc. ("Aviation Alliance") is a risk retention group[1] based out of Missoula, Montana. In 2009, Aviation Alliance contracted with Defendants Polaris Enterprise Group, Cameron Crebs, and Rick Crebs (collectively "Polaris") under a Master Service Agreement, (Doc. 9-1 (Dec. 1, 2009)), whereby Polaris provided administrative, underwriting,

---

[1] A risk retention group "consists of independent companies that assemble to create and fund a licensed captive insurance company and is able to write common commercial liability insurance, including completed products, for its members, purchase or provide excess insurance, manage general underwriting and applications, determine rates, collect premiums, and adjust or settle claims." (Compl., Doc. 1 at ¶ 8.)

1

and support services for the operation, management, and administration of Aviation Alliance. Under that Agreement, Polaris was the Broker of Record for all shareholders and policy holders of Aviation Alliance, the program manager of all Aviation Alliance's insurance operations, and the manager and administrator of Aviation Alliance.

In March 2017, Aviation Alliance sued, alleging nine causes of action against Polaris for its actions relating to and following the termination of the parties' relationship in October 2016. Aviation Alliance claims Polaris used its confidential and trade secret information to make misrepresentations to shareholders and, after the termination of the parties' relationship, failed to return that information and improperly used it to sell Aviation Alliance policy holders insurance policies provided by other carriers. According to Aviation Alliance, Polaris has "unlawfully replaced at least 49 [of its] policies with insurance issued by other companies with a resulting loss of [sic] in excess of $758,000.00 of premium." (Compl., Doc. 1 at ¶ 19.)

Polaris, which has not yet filed an answer, seeks to compel arbitration pursuant to an arbitration clause in the 2009 Master Service Agreement. (Doc. 7.) Section 7 of that Agreement states in relevant part:

> **Arbitration**. Except as otherwise provided herein, no civil action with

respect to any dispute, claim, or controversy arising out of or relating to this Agreement may be commenced until the matter has been submitted to the Judicial Arbitration and Mediation Service ("JAMS") for non-binding arbitration under the JAMS' then-effective commercial arbitration rules. The parties covenant that they will participate in non-binding arbitration in good faith and that they will share equally in its costs. . . . Either party may seek equitable relief prior to the non-binding arbitration to preserve the status quo pending the completion of that process. Except for such an action to obtain equitable relief, neither party may commence a civil action with respect to the matters submitted to non-binding arbitration until after the arbitrator makes his determination. During the pendency of such arbitration, any applicable statute of limitations for claims related to this agreement will be tolled. The provisions of this Clause may be enforced by any Court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees, and expenses, including attorneys' fees, to be paid by the party against whom enforcement is ordered.

(Doc. 9-1 at 10.) The question here is whether this clause died with the Agreement or whether the arbitration clause, like a zombie, continues to come to life ever after the death of the Agreement. Polaris' motion is granted in part and denied in part.

## SUMMARY CONCLUSION

The 2009 Master Service Agreement, which terminated in October 2016, included a broad arbitration provision, requiring arbitration of "any dispute, claim or controversy arising out of or relating to th[e] Agreement." (Doc. 9-1 at 10.) Aviation Alliance—the drafter of the Agreement and arbitration clause—argues the arbitration provision died with the contract. Polaris insists it survived. Both

3

parties are partially correct. To the extent Aviation Alliance's claims arise under the 2009 Agreement, they remain subject to the zombie arbitration provision postexpiration. *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. Nat'l Labor Relations Bd. (Litton)*, 501 U.S. 190, 205 (1991).

## ANALYSIS

Federal law governs the question of arbitrability because the Master Service Agreement is covered by the Federal Arbitration Act ("FAA") and the parties did not "clearly and unmistakably designate[] that nonfederal arbitrability law applies." *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (emphasis omitted) (citing *Mitsubishi Motors Corp. v. Soler Chrylser-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). The FAA applies to any contract, like the present one, "evidencing a transaction involving commerce." 9 U.S.C. § 2. This provision reflects both a "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and the "fundamental principle that arbitration is a matter of contract," *id.* (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

There are two "gateway" issues in deciding whether to compel arbitration: "(1) whether there is an agreement to arbitrate between the parties; and (2)

whether the agreement covers the dispute." *Brennan*, 796 F.3d at 1130 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Both issues are implicated here. Although the 2009 Master Service Agreement undisputedly contains the arbitration provision indicated above, Aviation Alliance insists it does not apply here because: (1) the Agreement terminated in October 2016 and there is no survival provision, (2) the conduct alleged occurred after the termination of the Agreement, and (3) the claims raised do not arise out the Agreement.

## I. Termination

Aviation Alliance first argues that the arbitration provision does not apply because the 2009 Master Service Agreement terminated in October 2016. (*See* Termination Letter, Doc. 14-1.) In the absence of an express negation or clear implication that the parties intended the arbitration clause to terminate automatically with the contract, there is a "presumption in favor of postexpiration arbitration . . . of matters and disputes arising out of the relation governed by contract." *Litton*, 501 U.S. at 204. The 2009 Master Service Agreement does not address termination of the arbitration provision, but generally provides in Section 5 "Term and Termination" that "this Agreement shall be extended a minimum of an additional five (5) years" and that the parties were to notify each other of such an extension 180 days prior to the end of the initial five-year period. (Doc. 9-1 at

5

7.) Nothing in the Agreement, nor in the arbitration clause itself, shows that the parties intended to eliminate the duty to arbitrate as of the date of the Agreement's termination.

Aviation Alliance argues that the absence of a "survival" clause in the 2009 Agreement—which was included in the proposed but not executed March 29, 2016 Service Agreement—rebuts the *Litton* presumption because it indicates that the parties did not intend for the arbitration clause to survive contract termination under the 2009 Agreement. (*See* 2016 Agreement, Section 13, Doc. 9-2 at 12 ("Notwithstanding anything in this Agreement or implied by law to the contrary, the agreements and covenants set forth in paragraph 6 (Books and Records), 7 (Non-solicitation), 10 (Arbitration) and 12 (General Provisions) shall survive the termination for any reason of this agreement.").) Aviation Alliance insists the parties' silence shows they intended to terminate the arbitration clause. *See Garland Coal & Min. Co. v. United Mine Workers of Am.*, 778 F.2d 1297, 1301-02 (8th Cir. 1985); *O'Connor Co., Inc. v. Carpenters Local Union No 1408 of the Untied Broth. Of Carpenters & Joiners of Am., AFL-CIO*, 702 F.2d 824, 825 (9th Cir. 1983). That argument is backwards in light of *Litton*, especially given the expansive nature of the arbitration clause at issue here. 501 U.S. at 204 (explaining that an "extensive obligation to arbitrate" under a contract would not

6

be consistent "with an interpretation that would eliminate all duty to arbitrate as of the date of [the contract's] expiration"). The duty to arbitrate under the 2009 Master Service Agreement did not terminate with the Agreement. *See id.* at 208 ("We presume as a matter of contract interpretation that the parties did not intend a pivotal dispute resolution provision to terminate for all purposes upon the expiration of the agreement."). The zombie clause is therefore alive, but alive for what?

## II. Scope

That question raises an issue about the scope of arbitrable claims. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25. Although "the phrase 'arising under' in an arbitration agreement is interpreted narrowly," "when parties intend to include a broad arbitration provision, they provide for arbitration 'arising out of or relating to' the agreement." *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 921, 922 (9th Cir. 2011) (quoting *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 709 F.2d 1458, 1464 (9th Cir. 1983)); *see also Tracer Research Corp. v. Nat'l Envir. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) (explaining that the absence

7

or presence of "or relating to" language "is significant"). Here, the language of the arbitration provision is broad as it includes both claims "arising out of" and those "relating to" the Agreement. (Doc. 9-1 at 10.)

Polaris insists that because of that broad contractual language, arbitration is required for all claims. (*See* Reply, Doc. 13 at 5.) However, while the termination of the 2009 Agreement in October 2016 did not terminate the duty to arbitrate, it limited the scope of postexpiration arbitration. As explained in *Litton*, the presumption in favor of postexpiration enforcement of arbitration agreements

> is limited to disputes arising under the contract. A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

501 U.S. at 205-06. As explained by the Court, "an expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied." *Id.* at 206. As discussed above, the arbitration provision at issue here is broadly drafted. But, as a consequence of the limitation of the postexpiration presumption under *Litton*, it must be narrowly construed. *Id.* at 204 (explaining postexpiration enforcement of arbitration provision "limited by the vital qualification that

8

arbitration was of matters and disputes arising out of the relation governed by contract"). Arbitration is therefore only compelled for those issues "arising under" the 2009 Agreement.

In determining whether a particular claim falls within the scope of the parties' arbitration agreement, courts focus on the factual allegations in the complaint rather than the legal causes of action asserted. *See Mitsubishi*, 473 U.S. at 622 n.9, 624 n.13. Aviation Alliance brings nine separate common law and statutory claims for relief against Polaris based on the same central factual allegations, but the zombie clause itself does not have nine lives. The claims are: Polaris used Aviation Alliance's confidential information to make misrepresentations to shareholders, failed to return that information, and used it to sell Aviation Alliance policy holders insurance policies provided by other carriers. Pursuant to *Litton*, the dispute is arbitrable if it: (1) involves facts or occurrences that pre-date termination, (2) infringes on rights vested or accrued under the agreement, or (3) survives under normal contract principles. 501 U.S. at 206. The parties did not assess arbitrability in the context of the independent causes of action. Doing so here, arbitration is required for Counts II, III, IV, V, and XI.

### A. Tortious Interference (Count I)

Aviation Alliance first alleges that Polaris "intentionally and willfully

interfered with" existing insurance contracts and the "reasonable expectation of future renewals by soliciting and attempting to solicit [Aviation Alliance]'s policy holders and shareholders to terminate their policies or not renew and purchase insurance policies through [Polaris] from insurance companies other than [Aviation Alliance]." (Doc. 1 at ¶ 23.) This allegation is based on interference with third party contracts, not the 2009 Agreement between Aviation Alliance and Polaris. Count I alleges activity that occurred after contract termination in October 2016, (*see* Doc. 11 at 3), and raises issue that "are predominantly unrelated to the central conflict over the interpretation and performance of the Agreement." *Mediterranean Enters., Inc.*, 708 F.2d at 1464; *see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 856 (2d Cir. 1987). The alleged interference could have been "accomplished even if the Agreement did not exist." *Mediterranean Enters., Inc.*, 708 F.2d at 1464. Count I is therefore not subject to arbitration.

### B. Trade Secrets (Counts II, III) & Conversion (Count IV)

In Counts II and III, Aviation Alliance alleges that Polaris misappropriated its trade secrets and confidential information in violation of Federal and state law. (Doc. 1 at ¶¶ 28-43.) Although Polaris' authorized use of that data was governed by the 2009 Agreement, (*see* Section 8, Doc. 9-1), Aviation Alliance argues that

Polaris' continuing use "would constitute an independent wrong from any breach of the[ir] ... agreement[]." *Tracer Research Corp.*, 42 F.3d at 1295. However, misappropriation requires a showing that the information was "acquired by improper means" or that there was a "duty to maintain the secrecy" of the information. 18 U.S.C. § 1839(5). Here, both the propriety of acquisition and the duties related to that information arise from the 2009 Agreement. (*See* Section 8.2: Permissible Use of Confidential Information, Doc. 9-1 at 11.) Although Aviation Alliance's claims are based on statutory causes of action for misappropriation that occurred primarily after contract termination, they require interpretation or application of the Agreement.

Similarly, Aviation Alliance alleges in Count IV that Polaris has "refused to return ... confidential information and trade secrets and retained and exercised control over [Aviation Alliance]'s property for [its] own use in competition with [Aviation Alliance]." (Doc. 1 at ¶ 47.) Once again, Polaris' possession and use of the information was governed by the 2009 Agreement and a claim for conversion requires a showing of "unauthorized dominion." *See Eatinger v. Johnson*, 887 P.2d 231, 234 (Mont. 1984) ("[A] claim for conversion must satisfy the following elements: ownership of property, a right of possession, unauthorized dominion over that property by another, and damages that result.").

11

Keeping in mind that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone*, 460 U.S. at 24-25, Counts II, III, and IV are subject to arbitration.

### C. Breach of Fiduciary Duty and Duty of Loyalty (Count V)

Aviation Alliance alleges that

> In its position as former manager, operator, administrator, and broker of record of [Aviation Alliance]'s insurance business, . . . Polaris . . . owed [Aviation Alliance] a fiduciary duty and a duty of loyalty to keep confidential and trade secrets of [Aviation Alliance] confidential, to not use such information for anything other than procuring insurance policies issued by [Aviation Alliance], to not solicit or procure insurance business from [Aviation Alliance]'s policy holders, shareholders, or customers or to compete against [Aviation Alliance], and to not place or issue insurance policies for [Aviation Alliance]'s policy holders, shareholders, or customers with insurance carriers other than [Aviation Alliance].

(Doc. 1 at ¶ 52.) Because these duties were created by the 2009 Agreement and have no independent basis, they fall within the scope of the arbitration clause. *Mediterranean Enters. Inc.*, 708 F.2d at 1464. Aviation Alliance's conclusory argument to the contrary is not persuasive. (Doc. 11 at 7.) Count V is subject to arbitration.

### D. Unfair Competition (Count VI) & Defamation (Count VII)

Aviation Alliance alleges that Polaris "in soliciting and replacing [Aviation Alliance] policies used, in commerce, false or misleading descriptions of fact or

12

false or misleading representations of fact which misrepresented the nature of qualities of [Aviation Alliance]'s goods, services or commercial activities constituting unfair competition" and defamation. (Doc. 1 at ¶¶ 58, 61.) Much like Aviation Alliance's claims for tortious interference, these causes of actions do not concern rights that vested or accrued under the 2009 Agreement or conduct that occurred during the Agreement. Because they do not "arise under" the Agreement, Counts VI and VII are not subject to arbitration.

### E. Unjust Enrichment (Count VIII)

Aviation Alliance alleges that by retaining and continuing to use its confidential information following the termination of the parties' relationship, Polaris was unjustly enriched. (Doc. 1 at ¶ 64.) Inherent in a claim for unjust enrichment is the absence of an express contract between the parties. *Estate of Pruyn v. Axmen Propane, Inc.*, 223 P.3d 845, 857 (Mont. 2009) ("Unjust enrichment is an obligation created by law in absence of an agreement between the parties."). Because Aviation Alliance's allegations involve conduct that post-dates the Agreement's termination and equitable relief distinct from that provided for by the Agreement, Count VIII is not subject to arbitration.

### F. Punitive Damages (Count IX)

Absent specific contractual language limiting an arbitrator's power based on

13

state law, punitive damages may be subject to arbitration under federal law. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 64 (1995). To succeed on a claim for punitive damages a plaintiff must show "actual fraud or actual malice." Mont. Code Ann. § 27-1-221(1). Here, Aviation Alliance pleads only a claim for actual malice. (*See* Doc. 1 at ¶ 67.) "A defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and: (a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or (b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff." § 27-1-221(2). A finding of actual malice related to arbitrable conduct is not foreclosed by the pleadings. Accordingly, Aviation Alliance's Count IX is subject to arbitration to the extent that the conduct upon which the punitive damages is based arose under the Agreement. *See Moses H. Cone*, 460 U.S. at 24-25 (requiring doubts be resolved in favor of arbitration).

### III. Stay

The decision to stay the balance of the proceedings pending arbitration is largely within a district court's discretion to control its docket. *Moses H. Cone*, 460 U.S. at 20 n.23; *Mediterranean Enters., Inc.*, 708 F.2d at 1465. However,

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Accordingly, resolution of Aviation Alliance's non-arbitrable claims (Counts I, VI, VII, and VIII) is stayed pending arbitration of the arbitrable issues.

## IV. Attorneys Fees

Polaris seeks to recover fees pursuant to the arbitration provision, which provides that "the party seeking enforcement shall be entitled to an award of all costs, fees, and expenses, including attorneys' fees, to be paid by the party against whom enforcement is ordered." (Section 7, Doc. 9-1 at 10.) While such recovery is complicated by the fact that the 2009 Agreement has expired, the arbitral fee provision remains enforceable consistent with the general federal policy in favor of arbitration. *See Ajida Techs., Inc. v. Roos Instruments, Inc.*, 104 Cal. Rptr. 2d 686, 699 (Cal. App. 2001). To the extent it prevailed, Polaris is entitled to costs and fees associated with bringing the present motion. Of the nine claims brought, arbitration is required for five (including punitive damages, which are limited to arbitrable conduct), or approximately half of the claims brought by Aviation

15

Alliance. Accordingly, Polaris shall recover half of its costs, fees, and expenses associated with the present motion.

## CONCLUSION

IT IS ORDERED that Polaris' motion to compel arbitration (Doc. 7) is GRANTED in PART and DENIED in PART. It is GRANTED as to Counts II, III, IV, V, and XI. Aviation Alliance's failure to initiate arbitration within ninety (90) days from today's date will result in the dismissal of its arbitrable claims with prejudice.

IT IS FURTHER ORDERED that resolution of the remaining, nonarbitrable claims (Counts I, VI, VII, and VIII) is STAYED pending arbitration of the arbitrable issues. *See* 9 U.S.C. § 3.

IT IS FURTHER ORDERED that Polaris' request for costs, fees, and expenses is GRANTED as to half of those incurred in bringing the present motion. Polaris shall file documentation of its request within seven (7) days of today's date.

DATED this 24th day of June, 2017.

Donald W. Molloy, District Judge
United States District Court